**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lynn M. Bleeker,<br><br>    Plaintiff,<br><br>v.<br><br>Mike Johanns, Secretary, United States Department of Agriculture,<br><br>    Defendant. | No. CV-07-0413-PCT-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Before the Court is Defendant's Second Motion for Summary Judgment (Dkt. 102) regarding Plaintiff's hostile work environment claim under Count V of her Complaint, which the Court permitted Defendant to file (Dkt. 101, Order dated April 24, 2009). Plaintiff responded to the motion (Dkt. 104). The parties did not request oral argument, and the Court finds the pending motion for summary judgment suitable for decision without oral argument. Having considered the parties' memoranda and other submissions, the Court now issues this Memorandum of Decision and Order granting Defendant's motion.

**BACKGROUND**

Defendant first filed a motion for summary judgment only addressing Plaintiff's retaliation claims (Dkt. 86), which the Court ruled upon on August 31, 2009 (Dkt. 106). Although Plaintiff's allegations for her retaliation claims do not directly pertain to her hostile work environment claim, the Court summarizes them here as helpful background. For a complete background of this case, see this Court's Order dated August 31, 2009 (Id.).

Plaintiff is a former employee of the United States Forest Service, an agency within the United States Department of Agriculture ("USDA") (Dkt. 90, Pl.'s Statement of Facts ("PSOF") ¶ 1). As a seasonal employee, Plaintiff had non-consecutive term appointments from 1980 until 2004 at various national forests, including the Coconino National Forest and Prescott National Forest (Id. ¶¶ 2, 22). She enjoyed a good working relationship with the Forest Service (Id. ¶ 3). In 1995 and 1996, she filed formal complaints of discrimination and retaliation against the Forest Service. The parties resolved both complaints through settlement (Id. ¶ 4).

In December 1999, Defendant selected Plaintiff as a Forestry Technician, Compliance/Collection Officer, GS-0462-5, which was a term appointment not to exceed four years ("Term I") (Id. ¶ 6). At the time, Vickie Dyer was the Human Resources Specialist for the Coconino National Forest (Id. ¶ 10). On March 30, 2000, Plaintiff contacted an EEO Counselor and alleged discrimination based on reprisal by personnel, particularly Ms. Dyer, in the Western Human Resources Office (Id. ¶ 7). The parties informally resolved the dispute through a settlement agreement on January 19, 2001 (Id.). The settlement agreement restricted Ms. Dyer from handling personnel actions involving Plaintiff and required Plaintiff to avoid contact with Ms. Dyer for a three-year period (Id.).

On February 20, 2002, the Forest Service sought authority from the Office of Personnel Management ("OPM") to extend the term appointments to March 30, 2005 for 48 employees, including Plaintiff (Id. ¶ 12). However, the OPM denied extensions for fourteen employees, including Plaintiff, who already had been extended in 1999 (Id. ¶ 17).

In October 2003, Defendant promoted Plaintiff to the position of Forestry Technician, Compliance/Collection Officer, GS-0462-6, which was another term appointment ("Term II") (Id. ¶ 22). For this promotion, Plaintiff signed a document regarding her term limits (Id. ¶ 23). Plaintiff believed that Human Resources had placed a term limit restriction on her, though, which it had not placed on other employees under the same circumstances (Id. ¶ 24). On October 28, 2003, Plaintiff contacted OPM because of the alleged hostility between her,

Ms. Dyer, and other personnel in the Western Human Resources Office (Id.). On January 15, 2004, Plaintiff's Term II appointment ended.

In spring 2005, Plaintiff applied for a permanent position of Forestry Technician, GS-0462-05, at the Prescott National Forest, Camp Verde, AZ (Dkt. 1, Compl. ¶¶ 42, 55). Defendant ultimately selected Gregory Page for the position in August 2005 (Id. ¶ 44).

Plaintiff brought this claim under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") against Defendant (Id. ¶ 1). Plaintiff claimed discrimination based on her sex and age and retaliation based on her protected activities (Id.). She alleged five counts: (1) retaliation/wrongful termination, (2) retaliation, (3) reprisal, (4) violation of ADEA, and (5) hostile work environment. After Defendant first moved for summary judgment, the parties stipulated to the dismissal of Plaintiff's ADEA claim in Count IV (Dkts. 93, 95). At that time, only Plaintiff's three retaliation claims and hostile work environment claim under Title VII remained.[1]

Defendant first moved for summary judgment on only Plaintiff's retaliation claims (Dkt. 86). After Defendant replied to his motion, Plaintiff moved to strike the new arguments raised in his reply, or in the alternative, for leave to file a surreply (Dkt. 98). Plaintiff alleged that Defendant did not properly address Plaintiff's retaliation claim as to her nonselection in 2005. Additionally, Defendant did not address Plaintiff's hostile work environment claim until his reply, to which Plaintiff did not have an opportunity to respond. The Court granted in part Plaintiff's motion by allowing Plaintiff to file a surreply regarding only her retaliation claim for her nonselection in 2005. In addition, the Court permitted the parties to file an additional motion for summary judgment regarding Plaintiff's hostile work environment claim (Dkt. 101). Defendant then filed an additional motion for summary judgment regarding Plaintiff's hostile work environment claim on May 23, 2009 (Dkt. 102).

---

[1] In Defendant's Second Motion for Summary Judgment, he mistakenly states that Plaintiff brought suit under the Rehabilitation Act (Dkt. 102). Plaintiff brought suit under Title VII (Compl. ¶ 1), though, which Defendant has correctly acknowledged on previous occasions (Dkts. 86, 97).

- 3 -

On August 31, 2009, the Court granted in part Defendant's first motion for summary judgment as to Plaintiff's Title VII retaliation claims regarding the expiration of her term appointments under Counts I and III of her Complaint (Dkt. 106). The Court denied in part Defendant's motion as to Plaintiff's Title VII retaliation claim regarding her nonselection in 2005 under Count II.

**STANDARD OF REVIEW**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is

a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

**DISCUSSION**

Defendant seeks summary judgment on Plaintiff's hostile work environment claim under Count V of her Complaint (Dkt. 102). Defendant contends summary judgment is warranted for two reasons: (1) Plaintiff did not raise a hostile work environment claim in her administrative claim so that she has not exhausted her administrative remedies and (2) Plaintiff cannot establish a prima facie claim of hostile work environment because she did not experience sufficiently severe or pervasive conduct. Thus, Defendant contends he is entitled to summary judgment as a matter of law.

Although Defendant contends that Plaintiff did not raise a hostile work environment claim in her administrative claims, he concedes that Plaintiff filed an Administrative Complaint, USDA Case No. 040243, listing reprisal, sex (female), and hostile environment as bases of discrimination when the USDA failed to extend her term position (Dkt. 102, Def.'s Second Statement of Facts ¶ 1). However, Defendant argues that Plaintiff provided no specific information regarding acts that could be interpreted as hostile; thus, the USDA could not conduct an appropriate and meaningful investigation. Instead, Plaintiff's only allegations in support of her hostile work environment claim related to work performance, managerial decisions, or human resource decisions. Therefore, the USDA only deemed the reprisal issue appropriate for investigation at the administrative level (Dkt. 102 at 4:10-24). Plaintiff counters that Defendant admits in both his motion and Answer to the Complaint that Plaintiff met all administrative prerequisites related to her claims (See id.; Dkt. 9, Answer ¶¶ 10-13). Rather than addressing whether Plaintiff meaningfully exhausted her administrative remedies, the Court will address the merits of Plaintiff's hostile work environment claim.

///

## I. Hostile Work Environment

Defendant asserts that Plaintiff cannot establish a prima facie claim of hostile work environment because she did not experience sufficiently severe or pervasive conduct. Plaintiff responds that the record contains Defendant's numerous acts of hostility, and the totality of the circumstances establishes a prima facie case of hostile work environment (Dkt. 104 at 11:7-12). Moreover, Plaintiff claims that Human Resources, and not her managers or co-workers, caused the harassment leading to a hostile work environment (Id. at 9:1-2).

In Plaintiff's Second Statement of Facts ("PSSOF"), she identifies the following "hostile acts" by Defendant against her (Dkt. 105, PSSOF ¶¶ 2-10 through 2-14), as listed in her Complaint: (1) Plaintiff was fully qualified for the GS-6 Term position that she applied for on July 17, 2003, but the Western Human Resource Office failed to place her name on the selection consideration list (Compl. ¶¶ 32-33); (2) the Western Human Resource Office refused to convert Plaintiff's Term II appointment to a new four-year appointment (Id. ¶¶ 34-36); (3) during the period of October 2003 through January 15, 2004, the Western Human Resource Office repeatedly denied the requests of Plaintiff's supervisors to implement the OPM-approved extension (Id. ¶ 37); (4) the Western Human Resource Office repeatedly granted extensions to similarly situated male employees and converted them to new term appointments while denying Plaintiff the same (Id. ¶ 38); and (5) on January 15, 2004, Plaintiff's Term II appointment ended (Id. ¶ 40).[2]

"An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that [she] was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was

---

[2] In Plaintiff's Response to Defendant's Second Statement of Facts, she contends that her Complaint need not provide a list of allegations allowing the Court to find a basis for the case to go forward, but rather her Complaint need only provide notice to Defendant (Dkt. 105, ¶ 10). Regardless of whether that argument has any merit, this case is at the summary judgment stage where, as noted, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

- 6 -

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Kortan v. Calif. Youth Auth., 217 F.3d 1104, 1109-1110 (9th Cir. 2000) (citation omitted); Manatt v. Bank of Am., N.A., 339 F.3d 792, 798 (9th Cir. 2003). "To determine whether an environment is sufficiently hostile, we look to the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Moreover, "[t]o prevail on a hostile work environment . . . claim, the plaintiff must show that her work environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so." Dominguez-Curry v. Nev. Trans. Dept., 424 F.3d 1027, 1034 (9th Cir. 2005) (citations omitted); Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1527 (9th Cir. 1995) (holding that a work environment "must both subjectively and objectively be perceived as abusive").

### A. Verbal or Physical Conduct of a Harassing Nature

In this case, Plaintiff cannot establish the first and third elements of a prima facie claim for hostile work environment. As for the first element, Plaintiff did not experience verbal or physical conduct of a harassing nature as she simply experienced employment decisions. Because the Western Human Resources Office merely carried out personnel actions, it did not subject Plaintiff to intimidation, ridicule, or insult. See Harris, 510 U.S. at 21 (holding that Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . ."). In fact, Western Human Resources barely had any verbal communication with Plaintiff, and they did not have any physical contact with her. Plaintiff focuses on the incident involving Ms. Dyer from Human Resources in 2000, but the parties resolved this incident by a 2001 settlement agreement prohibiting Ms. Dyer and Plaintiff from communicating with each other for three years.

After that time, Plaintiff does not allege that she had frequent verbal or physical contact with Human Resources. The Western Human Resources Office typically sent her written notices of employment decisions by letter, or Plaintiff learned about the decisions through her supervisors (See, e.g., PSSOF ¶¶ 2-25 through 2-28). Even if Plaintiff had some verbal or physical contact with Human Resources, she does not allege conduct of a harassing nature. Thus, she simply was not targeted with harassing verbal or physical conduct.

Although Plaintiff takes issue with the employment decisions, her allegations are more properly the subject of a retaliation claim. Plaintiff brought three retaliation claims regarding those employment actions, which the Court has already ruled upon.[3] Even if Western Human Resources did not qualify Plaintiff for the July 2003 position, she actually received a promotion on October 3, 2003 when Defendant selected her for the Term II position because she increased a grade level from 5 to 6 (See PSOF ¶¶ 6, 22). Moreover, the Court previously found that Western Human Resources and the USDA did not make the decisions about Plaintiff's term appointment extensions, but rather OPM made the decisions. Furthermore, Plaintiff's allegation that the Western Human Resource Office repeatedly granted extensions to similarly situated male employees and converted them to new term appointments while denying Plaintiff the same may be grounds for a disparate treatment claim based on sex discrimination, but Plaintiff did not bring such a claim (See Compl. ¶¶ 46-75). See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Moran v. Selig, 447 F.3d 748, 753 (9th Cir. 2006). Finally, the Court previously found that Plaintiff's Term II position expired in January 2004 by its own terms, which did not constitute retaliation. Even if Plaintiff's allegations are true, Western Human Resources plainly did not subject her to verbal or physical conduct of a *harassing* nature. For this reason alone, Plaintiff cannot establish a prima facie claim of hostile work environment and summary judgment is proper.

---

[3] See generally Dkt. 106, Order dated August 31, 2009. For a discussion of Plaintiff's allegations specifically regarding the Western Human Resources Office's hostility toward her in the retaliation context, see id. at 12:6-22, 15:19-16:12.

## B. Sufficiently Severe or Pervasive Conduct Altering the Conditions of Employment and Creating an Abusive Working Environment

With regards to the third element, the Western Human Resources Office's conduct was not sufficiently severe or pervasive. As noted, to establish a hostile work environment under Title VII, a plaintiff must show that a defendant's conduct was "so 'severe or pervasive' as to 'alter the conditions of [her] employment and create an abusive working environment.'" Montero v. AGCO Corp., 192 F.3d 856, 860 (9th Cir. 1999) (quoting Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). "Not every insult or harassing comment will constitute a hostile work environment," but repeated derogatory or humiliating statements can constitute one. Ray, 217 F.3d at 1245 (contrasting a single incident with conduct that constituted sufficiently "severe or pervasive" harassment). Plaintiff has only alleged that Human Resources had infrequent contact with her regarding occasional employment decisions. When contrasted with what the Ninth Circuit has found to be sufficiently severe or pervasive conduct, this minimal contact clearly does not constitute such conduct. See Kortan, 217 F.3d at 1110-11 (finding that while a supervisor's references to a female employee as a "castrating bitch," "madonna," or "regina" in plaintiff's presence and name-calling of plaintiff as "Medea" were offensive, his conduct was not severe or pervasive enough to unreasonably interfere with plaintiff's employment); Gregory v. Widnall, 153 F.3d 1071, 1074-75 (9th Cir. 1998) (rejecting a hostile work environment claim based on a "[a] single drawing of a monkey on a memo circulated by senior NCO's, accompanied by the verbal explanation that it was intended to remind officers not to 'get the monkey off their back' by passing their responsibilities to others"); EEOC v. Hacienda Hotel, 881 F.2d 1504, 1515 (9th Cir. 1989), overruled on other grounds by, Burrell v. Star Nursery, Inc., 170 F.3d 951 (9th Cir. 1999) (finding sufficiently severe or pervasive harassment when a supervisor "repeatedly engaged in vulgarities, made sexual remarks, and requested sexual favors" while another supervisor "frequently witnessed, laughed at, or herself made these types of comments"); Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1109 (9th Cir. 1998) (finding

that a plaintiff's allegations that her supervisor regularly made sexual remarks to her throughout her employment and snidely laughed at her complaints to him raised a genuine issue of material fact). Because Plaintiff does not allege sufficiently severe or pervasive conduct, the Court can grant summary judgment in Defendant's favor for this reason.

Furthermore, Western Human Resources's conduct was not so severe or pervasive as to alter the conditions of Plaintiff's employment and create an abusive working environment. "Conduct must be extreme to amount to a change in the terms and conditions of employment." Montero, 192 F.3d at 860 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Plaintiff claims that Western Human Resources, and not her managers or co-workers, caused the harassment leading to a hostile work environment (Dkt. 104 at 9:1-2). As noted, Plaintiff had minimal and infrequent contact with Western Human Resources. Because Plaintiff did not work directly under or with the Western Human Resources Office, that office could not have created an abusive working environment for her. Rather, her managers and co-workers created her working environment. Plaintiff alleges that her "managers were all working on her behalf to have her remain in her position" (Id. at 9:7-8). Plaintiff further alleges that Tom Carney, her immediate supervisor prior to the expiration of her term appointment, hired her based on her work ability and "described her as one of the best employees he had hired" (Dkt. 104, Ex. 48, Davis Aff. at 2). Moreover, other supervisors tried to extend Plaintiff's term or select her for a new one (Dkt. 104 at 7:9-25). As Plaintiff concedes that her managers and co-workers, who she worked with nearly everyday, did not cause any harassment (Id. at 9:1-2), her claim that the Western Human Resources Office created an abusive working environment is specious. Even if Ms. Dyer and Human Resources harbored antagonism against Plaintiff, as she previously alleged (Dkt. 90 at 4-5), this alleged antagonism did not unreasonably interfere with Plaintiff's work performance. Considering the totality of the circumstances, the Court does not find Plaintiff's allegations sufficient to support a hostile work environment claim. See Ray, 217

F.3d at 1245. For this reason, Plaintiff's hostile work environment claim also fails as a matter of law.

Finally, Plaintiff cannot show that her work environment was both subjectively and objectively hostile. Plaintiff cannot demonstrate "that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so." See Dominguez-Curry, 424 F.3d at 1034; see also Fuller, 47 F.3d at 1527. She did not perceive her work environment to be hostile because, by her own admission, she related well to her managers and co-workers (Dkt. 104 at 7:1-20). Although Plaintiff claims that she became "completely frustrated" by the Western Human Resource Office's actions (Id. at 8:1), her mere frustration does not demonstrate that she perceived her work environment to be "hostile," as contemplated by the law. See Ray, 217 F.3d at 1245-46 (finding a plaintiff's allegations, among many, that his supervisors regularly yelled at him during staff meetings, called him a "liar," "troublemaker," and "rabble rouser," told him to "shut up," and made it difficult for him to complete his tasks constituted work difficulties that "rose to such a level that [plaintiff] took stress leave from his job"); see also Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000) (finding that plaintiff established the subjective portion of a hostile work environment claim because an incident with a co-worker pervaded plaintiff's work environment so much that she required psychological help and was unable to successfully return to job). Importantly, moreover, a reasonable person in her position would not perceive her work environment to be hostile. See Brooks, 229 F.3d at 924-27 (finding that although plaintiff had established the subjective portion, her apprehension was not objectively reasonable as a reasonable woman in her position would not believe the harassing behavior had permanently altered a term or condition of her employment). In conclusion, Plaintiff has misconceived the basis for a hostile work environment claim under the law. "Harassment is actionable only if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Ray, 217 F.3d

at 1245 (quoting Harris, 510 U.S. at 21). Clearly, Plaintiff's allegations do not come near this threshold, and summary judgment is appropriate as a matter of law.

### C. Hostile Work Environment as a Retaliation Claim

Plaintiff brought a hostile work environment claim under Count V of her Complaint, which was separate from her three retaliation claims. However, in addition to her allegations of harassment in Count V, Plaintiff states that "[a]s a consequence of the retaliation, Plaintiff has suffered damages . . ." (Compl. ¶ 75). Plaintiff also argues in her response to Defendant's motion for summary judgment that the Western Human Resources Office's conduct was based on her protected activity (Dkt. 104 at 2:23-3:22, 13:12-16). Although unusual in the retaliation context, the Ninth Circuit has held that a hostile work environment may be the basis for a retaliation claim under Title VII. Ray, 217 F.3d at 1244-45. When a hostile work environment is alleged as a retaliation claim, though, a plaintiff must still show harassment that is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Hardage v. CBS Broad., Inc., 427 F.3d 1177, 1189 (9th Cir. 2005) (quoting Ray, 217 F.3d at 1245 and Harris, 510 U.S. at 21). For the reasons already discussed, Plaintiff cannot show sufficiently severe or pervasive conduct that altered the conditions of her employment and created an abusive working environment. Thus, a hostile work environment alleged as a retaliation claim also fails as a matter of law.

### CONCLUSION

Summary judgment is proper as to Plaintiff's hostile work environment claim under Count V of her Complaint. Despite the taking of substantial discovery, Plaintiff fails to set forth specific facts showing that there is a genuine issue for trial. See Brinson, 53 F.3d at 1049. Plaintiff fails to provide the evidence to support her allegations, let alone allege sufficient facts to support a hostile work environment claim. Plaintiff's claim fails as a matter of law because Plaintiff cannot show harassment that is sufficiently severe or pervasive to be a hostile work environment. For the same reasons, even if Plaintiff's hostile

work environment allegation was construed as a retaliation claim, it would still fail as a matter of law. Therefore, the Court grants Defendant's motion for summary judgment as to Count V of Plaintiff's Complaint. As such, only Count II of Plaintiff's Complaint regarding her nonselection in 2005 remains.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Second Motion for Summary Judgment (Dkt.102) regarding Plaintiff's hostile work environment claim under Count V of her Complaint is **GRANTED**.

DATED this 2nd day of December, 2009.

Stephen M. McNamee
United States District Judge